763 P.2d 986

**Chester DELOZIER, Plaintiff–Appellee,**

v.

**Wilbur EVANS and Ella Evans, husband and wife, Defendants–Appellants.**

**No. 1 CA–CIV 9573.**

Court of Appeals of Arizona,
Division 1, Department C.

July 14, 1988.

Reconsideration Denied Aug. 25, 1988.

Review Denied Nov. 29, 1988.

Robinson & Syme by James J. Syme, Jr., Glendale, for plaintiff-appellee.

George M. Sterling, Jr., Phoenix, for defendants-appellants.

## OPINION

J. LaMAR SHELLEY, Judge Pro Tem.

Plaintiff, Chester Delozier, initiated this action against defendants, Wilbur Evans and Ella Evans, owners of the Bar X Tavern, after he was struck on the head with a baseball bat by assailants who had not been identified or apprehended as of the time of the trial. One of the assailants had been in the tavern and had been involved in an altercation with two men earlier that evening.

After trial, the jury returned a verdict for $65,000 in favor of Delozier. The defendants moved for judgment notwithstanding the verdict or, in the alternative, for a new trial and an amendment of the judgment. The trial court denied the motions with the exception of striking an award of prejudgment interest, and entered a formal judgment on the verdict.

While there were conflicts in the testimony, there was competent evidence from which the jury could have found the facts to be as follows.

At approximately 1:00 a.m. on April 30, 1984, three unknown men armed with baseball bats came into the Bar X Tavern in Phoenix and assaulted two patrons at the end of the bar near the front door. As the assailants began to leave through the rear door, one of the men struck Delozier on the head with a baseball bat, causing him serious injuries.

Unknown to Delozier, one of the assailants had been involved in an altercation at the tavern with two customers earlier that evening. This unidentified individual had been intoxicated, had argued with the two customers, and had fought with them in the parking lot. Immediately after the fight, he had returned to the tavern, appearing to have been beaten. Wiping blood from his face with a rag borrowed from the bartender, he had said to her, "I'm coming back with some friends of mine, I'm going to tear this place apart."

The bartender testified that although she had heard threats in bars many times before and had not seen any of them carried out, she did take this threat seriously. Notwithstanding the fact that she took the threat seriously, she did not warn anyone or take any other steps to protect the customers. She testified that she did not believe it was her obligation to warn customers that somebody who made a threat might come back.

Evidence was presented at trial that Delozier had been in the tavern when the threat was made and may have been involved in the earlier altercation. Whether this was true was a jury question, and we must view the evidence in the light most favorable to the prevailing party and give that party all reasonable inferences arising from that favorable view of the evidence. *McFarlin v. Hall*, 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980). We find that there was sufficient evidence, if believed by the jury, to support a finding that Delozier was not on the premises during the earlier altercation. This evidence underlies the issue whether the defendants' employee was negligent in failing to warn Delozier.

The defendants contend that the trial court erred by: (1) submitting the issue of negligence to the jury; (2) admitting the deposition testimony of the bartender; (3) excluding evidence of Delozier's character for aggressiveness; and (4) entering judgment against defendant Ella Evans. We find no error and affirm the judgment.

## WAS THE ISSUE OF NEGLIGENCE PROPERLY SUBMITTED TO THE JURY?

Defendants argue that foreseeability is a legal question which the court should have decided in their favor. Specifically, they assert that because the threat by Delozier's assailant was nonspecific and the potential for injury to Delozier was not foreseeable, defendants had no duty to warn Delozier of possible injury while he patronized their tavern. Defendants thus argue that the court should determine whether there was a breach of duty before deciding whether defendants were under an obligation to use some degree of care to avoid or to prevent injury to Delozier. This contention confuses the relationship between duty and negligence as explained in *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985). *See* Comment, *The Clarification of the Duty Concept in Personal Injury Suits in Arizona,* 28 Ariz.L.Rev. 323 (1986).

### 1. *Duty*

In *Markowitz,* the Arizona Supreme Court stated that:

[t]he question of duty is decided by the court. The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risks.

*Id.* at 356, 706 P.2d at 368. Therefore, before we reach the issue of breach of duty, we must first decide whether there was a duty. *See McDonald v. Smitty's,* 157 Ariz. 316, 757 P.2d 120 (Ct.App.1988).

The duty of tavern owners to exercise reasonable care and diligence to protect their invitees from injury has been recognized in several Arizona cases. *See McFarlin; Sucanick v. Clayton,* 152 Ariz. 158, 730 P.2d 867 (App.1986); *Hebert v. Club 37 Bar,* 145 Ariz. 351, 701 P.2d 847 (App.1984); *Pierce v. Lopez,* 16 Ariz.App. 54, 490 P.2d 1182 (1971). The defendants clearly *owed* this duty to Delozier. A separate question is whether they *breached* it when they failed to warn him of the threat.

The duty of a tavern owner is to exercise reasonable care and diligence to protect its invitees from injury, and the duty question is not determined by whether a particular patron should have been warned of impending injury. The Arizona Supreme Court stated in *Coburn v. City of Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984):

We believe that an attempt to equate the concept of "duty" with such specific details on conduct is unwise. Attempting to define or evaluate conduct in terms of duty tends to rigidify the concept of negligence—a concept which by definition, must vary from case to case, depending upon the relationship of the parties and the facts of such case.

*See also Comment, The Clarification of the Duty Concept at 327.*

### 2. *Standard of Care*

Even where tavern owners have the duty to exercise reasonable care and diligence to protect their invitees from injury, this does not automatically impose liability for injuries on tavern owners as defendants. After it has been determined that such defendants had a duty, the standard of care imposed on the defendants must be determined, and finally, whether the defendants breached that standard. *Markowitz,* 146 Ariz. at 356, 706 P.2d at 368. In this case, the standard of care imposed on defendants, as tavern owners, was to exercise reasonable care and diligence to protect their invitees from injury. *McFarlin,* 127 Ariz. at 222, 619 P.2d at 731.

### 3. *Breach of Duty*

We next determine whether there was a breach of duty, or in other words,

whether defendants were negligent. The test for whether conduct is negligent is whether it subjects others to foreseeable and unreasonable risk of injury. *Markowitz*, 146 Ariz. at 357, 706 P.2d at 369.

The general rule to be applied is that where reasonable people could differ as to whether the danger of some injury is foreseeable, the question of negligence is one of fact for the trier of fact to decide. *Markowitz* at 357, 706 P.2d at 369.

We do not believe that it can be said in this case that all reasonable people would agree that the danger was unforeseeable. There is sufficient evidence, if believed by the trier of fact, to support a finding that defendants' employee was negligent in failing to take steps to protect or warn patrons of the tavern. Under these circumstances, the appellate court must view the evidence in the light most favorable to the prevailing party and give that party all reasonable inferences arising from that favorable view of the evidence. *McFarlin*, 127 Ariz. at 224, 619 P.2d at 733. We conclude that there was sufficient evidence upon which reasonable persons could differ. Therefore, the negligence issue was properly submitted to the jury.

As stated in *McFarlin*, "[t]he foreseeability of the extent of the actual injury or the manner in which it is inflicted is immaterial." *Id.* at 222, 619 P.2d at 731. The threat to come back with friends and inflict damage was sufficiently specific to put reasonable persons on notice that all patrons in the tavern might be in danger. The bartender testified that, although she had heard threats in bars many times before and had never seen any of them carried out, she did take this threat seriously. Plaintiff was within the class of persons foreseeably at risk.

■ Defendants contend that the subsequent criminal acts of the assailants were a superseding intervening cause relieving them of liability. A comparable argument was expressly raised and rejected in *McFarlin*. The court, quoting the *Restatement (Second) of Torts* § 281, comment h (1965), stated:

The problem which is involved in determining whether a particular intervening force is or is not a superseding cause of the harm is in reality a problem of determining whether the intervention of the force was within the scope of the reasons imposing the duty upon the actor to refrain from negligent conduct. If the duty is designed, in part at least, to protect the other from the hazard of being harmed by the intervening force, or by the effect of the intervening force operating on the condition created by the negligent conduct, then that hazard is within the duty, and the intervening force is not a superseding cause.

*Id.* at 226, 619 P.2d at 735.

The duty of the bartender here was to exercise reasonable care and vigilance to protect invitees from injury caused by others in the bar. Thus the acts of the unknown assailant and his companions could not be a superseding cause.

Defendants cite *Chavez v. Tolleson Elementary School District*, 122 Ariz. 472, 595 P.2d 1017 (App.1979), to support their claim of lack of foreseeability. In *Chavez*, a young girl left school and was abducted and slain. Her parents sued the school district. This court found that it was not foreseeable that a child leaving the school grounds would be abducted and slain. However, we noted that "There are no facts in the record indicating that school personnel should have been aware of the potential criminal conduct in the area of Tolleson Elementary School District, Unit 2." *Id.* at 478, 595 P.2d at 1023. Unlike the *Chavez* case, there are facts in the record in this case from which the jury could have found that the bartender recognized that the assailant posed a potential danger to her customers.

## DEPOSITION TESTIMONY OF THE BARTENDER

■ The parties agree that the testimony of the bartender, Donna Lynn Lyons, was necessary in order for Delozier to establish his claim. Defendants contend that the credibility of the bartender was so im-

portant that it was improper to permit her deposition testimony to be introduced.

On the first day of trial, Delozier's counsel informed defendants' counsel and the trial judge of the apparent unavailability of the bartender. Defendants' counsel objected to the use of the deposition and first urged that Delozier either produce the witness or rest without her. Later he asked for a continuance.

Rule 32(a)(3)(D), Arizona Rules of Civil Procedure, permits the use of deposition testimony subject to the rules of evidence where the party offering the deposition has been unable to procure the attendance of the witness by subpoena. Rule 804, Arizona Rules of Evidence, permits the use of deposition testimony where the witness is unavailable.

Whether there has been compliance with Rule 32 is a question within the sound discretion of the trial court. *Edwards v. Van Voorhis*, 11 Ariz.App. 216, 221, 463 P.2d 111, 116 (1970). It should be construed broadly to secure the just, speedy and inexpensive determination of an action. Rule 1; *Union Bank v. Safanie*, 5 Ariz. App. 342, 427 P.2d 146 (1967) (interpreting former Rule 26(d)(3), which is now the subject matter of Rule 32(a)).

In *Erickson v. Waller*, 116 Ariz. 476, 569 P.2d 1374 (App.1977), this court held that the foundation to establish unavailability and diligence in attempting to procure the attendance of a witness is largely within the discretion of the trial court. In upholding the admission of deposition testimony of an expert witness, this court noted that the proponent of the testimony had made three unsuccessful attempts to serve the witness and on the third attempt was advised that the witness was out of state.

The trial court in this case conducted a hearing, at which efforts to serve the bartender were explained. Delozier's counsel, unable to locate the bartender at a previous address or through her present employer, retained the private investigator who had previously taken the bartender's statement. The investigator located the bartender's mother, who stated that her daughter was in an alcoholic rehabilitation center in Chandler, Arizona, but refused to say precisely where. The investigator then determined that there was only one alcoholic rehabilitation center in Chandler. A process server attempted to serve a subpoena on the bartender at the alcoholic rehabilitation center. Employees at the center refused to confirm or deny the presence of the bartender and stated that, pursuant to federal law, they were unable to release that information. A second attempt was also refused.

At the request of the trial judge, Delozier's counsel had a third subpoena issued and again attempted service at the rehabilitation center. Employees at the center refused to confirm or deny the presence of the bartender. We conclude that Delozier demonstrated due diligence in attempting to locate and serve the bartender.

Following the hearing, the trial court denied defendants' request for a continuance and allowed the deposition to be read to the jury. We conclude that the trial court's decision to allow the deposition testimony was not an abuse of discretion.

## CHARACTER EVIDENCE

■ The trial court excluded testimony offered to show that Delozier was combative and aggressive when intoxicated. Defendants contend that this ruling was in error because Delozier had put his character into evidence. They base their contention in part on Delozier's testimony that he had never had an argument in the Bar X Tavern. He made this assertion on direct and cross-examination.

Defense counsel countered by offering testimony of witnesses who could impeach Delozier's statement by testifying to an incident that occurred in 1985, over a year after the assault which was the subject of this lawsuit. Defense counsel also offered testimony of an acquaintance of Delozier that he was aggressive when he was intoxicated. The trial judge refused to admit this evidence.

The trial court based its exclusion order on Rule 404(a), Arizona Rules of Evidence, and because it was impeachment on a col-

lateral matter. Defendants contend that Delozier's character was not a collateral matter, given their theory that Delozier had been involved in the earlier disturbance with the principal assailant. Further, they wanted to demonstrate that Delozier was aggressive when intoxicated to show that, rather than being the victim, he was singled out for assault because he was an aggressor.

Evidence of character is generally inadmissible to prove conduct on a certain occasion. *Pyeatte v. Pyeatte*, 21 Ariz.App. 448, 520 P.2d 542 (1974). This rule of inadmissibility is incorporated into Rule 404(a). Such evidence is not deemed irrelevant but, rather, is of relatively slight probative value compared to the risk of misuse by jurors. The concern is that jurors will find against a litigant merely because he has a violent, larcenous or careless character, not because he acted in accordance with his character on the occasion in question. 1 M. Udall & J. Livermore, *Arizona Practice: Law of Evidence* § 83 at 169–70 (2d ed. 1982).

Rule 404(a)(2) states that evidence of a person's character is not admissible to show that he acted in conformity therewith, except that the evidence of a character trait of the victim of a crime may be offered by the accused or the prosecution in certain circumstances. While it is true that a crime was committed, this is not a criminal proceeding. Thus the evidence offered by defendants was not admissible under Rule 404(a)(2).

The evidence defendants sought to introduce was not evidence of Delozier's actions on the evening of the assault. Rather, it related to his general behavior in the past and to a specific incident that occurred long *after* the assault in question. To the extent that defendants claim that evidence of Delozier's aggressive behavior on an occasion after the assault was relevant to Delozier's truthfulness, it was an attempt to impeach on a collateral matter.

The trial court properly excluded the character evidence offered by defendants.

## JUDGMENT AGAINST ELLA EVANS

At the conclusion of Delozier's case, defense counsel sought a directed verdict in favor of Ella Evans on the ground that the plaintiff had introduced no evidence of her ownership interest in the Bar X Tavern. The trial judge denied the motion because he assumed that Wilbur Evans and Ella Evans were husband and wife and, if so, subject to the presumption that the tavern was owned as community property. The following exchange occurred:

MR. STERLING: While we are on the record, I would like—since we did have a discussion this morning as to my motions for directed verdict as to [Ella] Evans, I want the Court to understand, I think the record should reflect my motion was made strictly on a failure of proof at this point.

And the Court has indicated there is a presumption of—and that's why you denied it. There is a presumption of community interest. I do not—

THE COURT: That's correct.

MR. STERLING: I do not dispute the evidence the Court is relying on. The point I make is plaintiff at this point has produced no evidence that Wilbur was married, the date of that marriage, or anything else. It's simply a failure of proof motion.

THE COURT: And so that the record is complete on both sides of this issue. In chambers off the record earlier this morning, I told both counsel that if I was presented with any kind of documents of any nature indicating that [Ella] Evans was not a co-owner of the tavern, I would get her out of the case one way or the other so she was not exposed to any liability, but until I'm presented with something to show that, I assume she is a joint owner as a part of the community of the tavern. So we'll go in.

Delozier argues that any deficiency in his case-in-chief was overcome by defendants' proof. A renewal of a motion for a directed verdict should be denied if, at the time it is made, the necessary proof has been supplied, even though it was incorrectly decided in the first place. *See generally* 9

Wright & Miller, *Federal Practice and Procedure* § 2534 at 589–90 (1971). Arizona has followed this rule. *State v. Bustamante*, 103 Ariz. 551, 553, 447 P.2d 243, 245 (1968). *See also State v. Adrian*, 24 Ariz.App. 344, 346, 538 P.2d 773, 775 (1975).

Defense counsel called Wilbur Evans as a witness. He testified on cross-examination that he purchased the Bar X Tavern in 1944 with a partner, then seven years later bought out his partner's interest during his marriage to Ella Evans. This acquisition during marriage gives rise to a presumption that the bar was community property. Arizona Revised Statutes § 25–211.

The presumption that the Bar X Tavern was community property was rebuttable, but only by clear and convincing evidence. *Bender v. Bender*, 123 Ariz. 90, 93, 597 P.2d 993, 996 (App.1979). During the argument on the motion for directed verdict, the court invited defendants' counsel to present evidence that would rebut the presumption. No such evidence was offered.

We do not believe that the failure of the judge to grant the motion for directed verdict prejudiced defendants. Had the motion been granted, Delozier's counsel could have moved to reopen the case to supply the missing evidence as to the marriage of Wilbur and Ella Evans and the date thereof. Had there been clear and convincing evidence that the Bar X Tavern was not community property, we assume that defendants' counsel would have introduced it.

Since we find no error in the trial court, we affirm the judgment.

CORCORAN, P.J., and FIDEL, J., concur.